**UNITED STATES, Appellee,**

v.

**Eugene G. ISAACS, Staff Sergeant, U.S. Marine Corps, Appellant.**

No. 45237.

NMCM 82–3077.

U.S. Court of Military Appeals.

Feb. 4, 1985.

For Appellant: *Lieutenant Rickey P. Roecker*, JAGC, USNR (argued); *Lieutenant Commander Jeanne Carroll*, JAGC, USN, *Lieutenant Jerome A. Busch*, JAGC, USNR (on brief); *Commander Matthew J. Wheeler*, JAGC, USNR, *Lieutenant Commander Frederick N. Ottie*, JAGC, USN.

For Appellee: *Lieutenant Charles M. Fresher*, JAGC, USNR (argued); *Commander Richard A. Monteith*, JAGC, USN, *Commander Jay M. Siegel*, JAGC, USNR (on brief); *Commander W.J. Hughes*, JAGC, USN, and *Major J.S. Uberman*, USMC.

*Opinion of the Court*

EVERETT, Chief Judge:

Pursuant to his pleas, the accused was found guilty of violating Article 92 of the Uniform Code of Military Justice, 10 U.S.C. § 892, by selling 117 grams of marihuana on January 12, 1982; selling 102.3 grams on February 4, 1982; and possessing 1320 grams on that same date. Five specifications alleging similar violations of this same regulation were withdrawn with prejudice pursuant to a pretrial agreement. Isaacs was sentenced to a dishonorable discharge, confinement at hard labor for 30 months, total forfeitures, and reduction to pay grade E-1. The convening authority halved the confinement portion of the sentence but otherwise approved the findings and sentence. After the Court of Military Review affirmed, we granted review on this specified issue:

> WHETHER, IN THE CIRCUMSTANCES OF THIS CASE, SPECIFICATION 7 OF THE CHARGE (SALE OF MARIHUANA IN VIOLATION OF NAVY REGULATIONS) IS NOT SEPARATELY PUNISHABLE FROM SPECIFICATION 8 OF THE CHARGE (POSSESSION OF MARIHUANA IN VIOLATION OF THE SAME REGULATIONS). *SEE UNITED STATES V. IRVING*, 3 M.J. 6 (C.M.A.1977).

This issue can best be understood by referring to the accused's account of the events of February 4, 1982. According to his testimony during the providence inquiry:

Well, sir, I was sitting at home and waiting on a phone call from my wife in Winston-Salem. And this black man came to my door. I'd seen him before. And he asked me if I had any marihuana that I wanted to sell. And I told him yes I did, but I didn't have it with me, I'd have to go get it. And I told him to come back at a certain time. So when he left, I went and got it. He came back and we—I gave it to him. He gave me the money. And he left, sir. Then approximately an hour later I was arrested by the civilian authorities.

The amount sold, according to the laboratory report, was 102.3 grams. The marihuana which was the subject of the specification alleging possession of 1320 grams was not found at the accused's home in Jacksonville, North Carolina. Instead, as he explained:

I suppose they followed me when I went to get what I sold that other guy, because I had it "stashed" out in the woods, just outside of town. And I think they followed me out there—after I got it—then I came on back into town, and then me and the other guy made the transaction, sir.

To the best of the accused's knowledge, law enforcement authorities "were in possession of this marihuana before they 'busted' ..." him.

In connection with the providence inquiry, the defense counsel informed the judge that he had advised Isaacs that the maximum punishment was dishonorable discharge, 6 years' confinement, total forfeitures, and reduction to E-1; and both the trial counsel and the military judge stated their concurrence with this advice. If, as appellate defense counsel now contend, the specifications alleging possession and sale on February 4 were multiplicious for sentencing purposes, then the maximum confinement imposable was only 4 years, instead of 6.

The leading precedents are *United States v. Smith*, 1 M.J. 260 (C.M.A.1976), and *United States v. Irving*, 3 M.J. 6 (C.M. A.1977). In *Smith* the accused had been convicted of a wrongful attempt to sell a prohibited drug and wrongful possession of the same drug. Because the quantity possessed by the accused had exceeded the amount he had attempted to sell, the trial judge rejected a defense contention that the two offenses were multiplicious. In overturning this ruling, Judge Cook explained:

However, a stipulation of fact and the responses by the accused during the judge's inquiry into the providence of his plea indicate that the attempted sale occurred shortly before and at the same place where the accused was apprehended, while in possession of the drug.

Accordingly, the facts, considered "in the light most favorable to the Government, ... nonetheless, are so integrated as to emerge as a single event subject only to a single punishment." 1 M.J. at 261.

Senior Judge Ferguson concurred in the result without opinion. Chief Judge Fletcher, although concurring in the result, wrote:

A rule requiring trial judges and appellate courts to enter the factual morass of every drug case to resolve whether multiple charges "are so integrated as to emerge as a single event subject only to a single punishment" is in my view judicially unsound for it provides little, if any, guidance as to what is and is not multiplicious. *See United States v. Armstrong*, 46 C.M.R. 857, 860 n. 1 (A.C. M.R.1972) (dissenting opinion). The facts of this case provide such an example for never before has the Court squarely held that a serviceman who possesses more of a drug than he attempts to sell is subject only to a single punishment.

In his view the rule should be:

Absent an expression of congressional intent to the contrary, it is inappropriate to subject an individual to multiple punishment for multiple drug offenses where the drug allegedly distributed, transferred, used, or sold is part or all of the quantum of the drug allegedly pos-

sessed. To hold otherwise would subject the individual who transfers only a portion of the drug in his possession to a penalty twice as severe as that applicable to a drug dealer who succeeds in distributing his entire cache.

1 M.J. at 262.

In *Irving*, the accused had been convicted of soliciting Sergeant Raither to sell heroin, transferring the drug to Raither, and possessing it—all of which offenses had occurred on the same day. The solicitation had taken place in Irving's room on the first floor of the barracks, and then 3½ to 4½ hours later the transfer was accomplished in a room on the third floor of the building. According to Judge Cook's opinion for a unanimous Court, the solicitation was separate from the transfer and possession.

With respect to the transfer and possession charges, Judge Cook noted:

Raither went to the accused's room. After several minutes of conversation, they were joined by McDonald. The accused then took a vial from a locker, and the trio went to McDonald's room. While there, the accused poured out the contents of the vial onto a newspaper, and the three prepared packets from pieces of the newspaper, with a small amount of powder from the vial in each packet. The accused gave 20 packets to Raither and 20 to McDonald; he retained the balance. Raither was to sell the packets and give the proceeds to the accused, who, in turn, would give him 15 percent of the profits. According to the theory expounded by trial counsel, this transfer to Raither was the subject of the Charge, specification 1, and the accused's retention of the remaining packets of heroin was the subject of Additional Charge, specification 3.

Manifestly, the transfer and possession of the heroin by the accused took place at the same time and in the same room. As the transfer was for the purpose of constituting Raither an agent of the accused for the sale of that part of the heroin transferred, arguably the ac-

cused still maintained such direction and control over the drug as to be legally in possession of it. *See United States v. Davis*, 461 F.2d 1026, 1035 (3d Cir.1972). Aside from the effect of such continuity of possession, the connected chain of events between these two offenses requires that they be treated as single for the purpose of punishment.

3 M.J. at 7 (footnote omitted).

In the present case, the possession and the sale are far less "integrated" than was true of the offenses in either *Smith* or *Irving*. Isaacs' cache of marihuana was located in a different part of town from the place where the sale occurred. Clearly Isaacs' possession of the marihuana was not for the purpose of accomplishing the particular sale that took place on February 4. Moreover, unlike *Irving*, Isaacs in no way retained possession of the heroin after selling it to the man who visited his home; and that man was not in any way his agent through whom he retained possession. So different facts are involved here in establishing each offense; and there was no "single impulse or intent" which led to commission of these two offenses. *See* para. 76a (5), Manual for Courts-Martial, United States, 1969 (Revised edition).

Moreover, although both the possession and the sale were alleged as violations of the same Navy regulation, it seems at least arguable that they "involve[d] violations of different social standards" and "the breach of separate duties." *See* para. 76a (5), Manual, *supra*.

■ This Court has demonstrated its concern about pyramiding charges from a single event. *See, e.g., United States v. Zubko*, 18 M.J. 378 (C.M.A.1984); *United States v. Brown*, 18 M.J. 360 (C.M.A.1984). Moreover, we are aware that the "presupposition of our law [is] to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment." *Bell v. United States*, 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955).

■ Even so, we conclude that Isaacs' possession of a cache of marihuana seized

by law enforcement officials in one part of Jacksonville, North Carolina, was quite separate for sentencing purposes from the sale of marihuana in his home in another part of town. Indeed, these offenses seem much more separate than the solicitation to sell and the transfer of heroin which this Court unanimously held to be separate in *United States v. Irving, supra.* Were there otherwise any doubt in this regard, it would be resolved in our minds by the circumstance that defense counsel and the other trial participants concluded that the two offenses were separate.

With respect to Judge Fletcher's concern about the inequity of subjecting an "individual who transfers only a portion of the drug in his possession to a penalty twice as severe as that" for "a drug dealer who" distributes "his entire cache," we observe that a dealer who makes ten sales of heroin from a single cache would be subject to ten times the penalty imposable for a single sale. Yet the moral culpability under these circumstances probably is not ten times greater. In short, this Court cannot assure that all maximum penalties will be entirely proportionate. Instead, to some extent we must rely on sentencing and reviewing authorities to see that servicemembers receive fair and equitable punishment. Finally, even if the offenses here were multiplicious, appellant could hardly have been prejudiced in light of the convening authority's reduction of his confinement from 30 to 15 months.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.*

Judge COX concurs.

Judge FLETCHER did not participate.

---

* Appellee's motions to file document and to file supplemental pleadings are now moot. Regarding footnote 1 in Appellant's Opposition to both motions, counsel's attention is invited to this Court's Rule 16(a).